## FRANK BENNETT v. EDWIN T. HAZEN.

*Negligence—Storing stone in highway—Control of horse—Contributory negligence.*

1. In this case, the judgment being affirmed by an equal division of the Court, *nothing* is decided.

2. MORSE, J., filed an *affirmative* opinion, concurred in by CHAMPLIN, J., holding:

    *a*—The owner of premises adjoining a highway has no business to fill up any portion of the same with stones, wood-piles, brush-heaps, or any refuse matter from his premises; and the practice of so doing, indulged in by many, has not yet grown into a custom that the law will respect, or use as an excuse for injuries therefrom. He may use portions of the highway, outside of the traveled track, for the *temporary* storage of materials with which to build fences or walls; but, even in such cases, more care must be taken to guard against danger to those lawfully using the highway than was taken by the defendant in this case.

    *b*—It cannot be said, as *matter of law*, that the owner of a horse of a mild disposition, gentle and kind, and used to being driven to water without halter or bridle, loose, in the highway, is guilty of negligence in permitting the animal to be so driven; it being a question for the jury whether, under the circumstances, the horse was so driven prudently and with ordinary care.

3. CAMPBELL, C. J., filed an opinion, concurred in by SHERWOOD, J., favoring a *reversal,* and holding:

    *a*—It is not safe to turn horses loose into the street *at all*, and the owner who does this is responsible for what may befall the beast.

    *b*—In this case the horse was directly imperiled by the person in charge, and was liable to do as well as to suffer injury.

Error to Oakland. (Stickney, J.) Argued June 16, 1887. Decided July 7, 1887.

Case. Defendant brings error. Affirmed by an equal

division of the Court.   The facts are stated in the opinion.

*Baldwin, Draper & Jacokes,* for appellant.

*Aaron Perry,* for plaintiff.

MORSE, J.   This is an action on the case wherein the plaintiff seeks to recover the value of a horse which he claims was injured and rendered worthless by the unlawful and negligent acts of the defendant in obstructing a public highway, and placing therein a pile of stones.

He recovered a judgment of $190 in the circuit court for the county of Oakland.   Defendant brings error.

The plaintiff resided in the township of Novi, upon his father's farm, on the north side of a public highway running east and west between sections 9 and 16, about 160 rods west of a public watering-place for horses and cattle.

The defendant owned a lot of 40 acres on the south side of the same road, and east of the said plaintiff.   In the spring of 1884 the defendant drew stone off from his lands, which were improved, and deposited them on the highway adjoining his land, near his road fence, and from eight to ten feet from the traveled track of the road.   In piling the stone, a space at the east end of the pile was left open, between it and the fence, about six feet wide.   The pile then ran along-side of the fence for five or six rods, converging towards the fence as it extended westward, and coming to a point close to the fence.   Before 1884 some large stone had been placed upon the north side of the road near the fence.   There was a free passage of 20 or 25 feet in width between these piles of stone.   There was room on each side of the traveled track for the free passage of an ordinary vehicle, without entering the traveled part of the highway ordinarily used by wagons.

The country was smooth, and free from obstructions, except these stones, from plaintiff's residence to the watering-

place. Four or five rods from the pile of stones to the east there was a hill rising some eight or ten feet, and east of such hill was an open gate or entrance from the highway upon the premises of one Durfee, who occupied land opposite that of the defendant.

On the morning of the twenty-second of August, 1884, the plaintiff permitted his brother, a young man, to drive his horses and cattle together along this highway to the watering-place, and back to plaintiff's premises. The record states that the plaintiff introduced evidence tending to show—

"That such stock was in the care of plaintiff's said brother during the whole of such trip, and were driven diligently and carefully."

After they had drank at the watering-place the plaintiff's brother started the horses on their return homeward. When opposite the opening gap into the lot of Durfee, on the north side of the road, the horses left the highway, and entered the said lot. The brother went after them. They came running out, and one of the horses, instead of continuing in the traveled track of the highway, left it, and ran between the fence and the defendant's pile of stone, running westward, and jumping over the stones where the pile was about two feet high. He was found immediately thereafter with his leg broken. He was injured so badly that he had to be killed.

It appeared from the evidence that in jumping the horse struck all of his feet upon the stones, the pile being from four to six feet in width.

The plaintiff showed his right to keep and pasture his animals upon his father's land, and that he had, previous to the time of the injury to the horse, caused him to be repeatedly driven to said watering-place and back again; and also that said horse was of a mild disposition, gentle and kind, and used to be driven to water loose, without halter or bridle.

The defendant's counsel requested the court to instruct the jury—

"That if the plaintiff permitted his horse to run loose in the highway, and there was sufficient room for a free passage, the plaintiff cannot recover."

And to the same effect if the jury found the stone in the highway to be 20 feet from the traveled track; that the defendant had a right to place stone and material in the highway for the purpose of building a wall; and, if he left ample room for the passage of teams and animals, he was not liable for damages for any animal, loose in said highway, running on said stone; and that the permitting by the plaintiff of his horse to run loose in the highway was negligence.

These requests were refused, and the court charged the jury, in substance, that there was no question in the law but the plaintiff had the right to drive this horse over this highway to the watering-place, and that the highway was made not only to be used for traveling with vehicles, but with horses and other stock in passing from one part of the country to the other; that if the jury found that the stones placed in the highway by the defendant were an obstruction to the highway, and the horses and cattle were being driven with ordinary diligence and care, and the horse was injured on account of these stones being in the highway, the defendant would be liable for such injury; but if the plaintiff or plaintiff's brother, who had charge of the stock at the time, did not have such control of the stock as to control them in the least, or, in other words, was not in the exercise of ordinary care in the driving of the stock, then it would be contributory negligence on his part, and the plaintiff could not recover.

The court also said:

"The defendant had no business to place an obstruction in the highway; and if the jury find that he placed an

obstruction in the highway, and that, in consequence of such obstruction, the plaintiff's horse was injured, and that, in driving the plaintiff's horses and cattle along the highway, the plaintiff or his agent was not guilty of contributory negligence,—such negligence on his part as contributed to the injury complained of,—then the plaintiff is entitled to recover such damages as he has suffered."

It will be seen that the questions of the negligence of the defendant and of the plaintiff were both left to the jury to be determined by them, with the instruction, in effect, that the plaintiff had the right to drive the horses in the highway, loose, if he had the least control over them, and used ordinary care in the driving of them.

The question of the defendant's negligence was properly submitted. There was no evidence in the case that the stones were placed in the highway for the purpose of building a wall; and, if there had been such evidence, there was no excuse for the stones being placed as they were. The owner of premises adjoining a highway has no business to fill up any portion of the same with stones, wood-piles, brush-heaps, or any refuse matter from off his premises. The practice of doing so, indulged in by many, has not yet grown into a custom that the law will respect, or use as an excuse for injuries suffered by the traveler therefrom. That he may use portions of the highway, outside of the traveled track, as a place of temporary storage for materials with which to build fences or walls, may well be admitted; but, even in such cases, more care must be taken to guard against danger to those lawfully using the highway than was done by the defendant in this case.

There is more difficulty in the consideration of the question of the plaintiff's negligence. The driving of cattle without rope or halter is a very common thing in the highway, and none can doubt the right of any person to so drive them if he uses ordinary care and diligence in the driving.

But it is claimed that it is not customary to so drive horses,

and that very few horses, if any, can be kept under control when loose in the highway or anywhere else. But I apprehend that it must be that there are horses of such age and disposition or training that it would be considered perfectly safe and prudent to drive them along a highway, like this, to water, and that there would be no more likelihood of danger or accident to them than there would be to cattle.

The evidence in this case, as appears from the record, showed, or tended to show,—

" That said horse had a mild disposition, was gentle and kind, and used to be driven to water loose, and with no halter or bridle."

I do.not think it can be said, as a matter of law, that the plaintiff was guilty of contributory negligence in permitting this horse to be driven.loose to water. Whether, under the circumstances, the horse was driven prudently and with ordinary care was a question for the jury to determine, and they were presumably drawn from a farming community, well fitted to decide the matter correctly.

"Whether, in a given case, physical or moral power over the animals is necessary, depends upon their nature, age, character, habits, discipline, and business or use at the time, and whatever other circumstances have a bearing upon the subject." *Jennings v. Wayne,* 63 Me. 468, 470.

The question of the negligence of the plaintiff seems to have been fairly submitted by the court. The jury were told that the care required was ordinary, reasonable care, taking into consideration the stock that was being driven, and all other matters that might appertain to reasonable care in handling stock. What would be such reasonable care and prudence seems to me would be legitimately within the province of the jury, and I know of no tribunal better fitted and more apt to come to a just conclusion as to such care and prudence than twelve men selected from the body of the people, as our juries are. At least, I do not feel competent

to instruct them as to the manner of or care to be exercised in driving horses or cattle upon the highway. The question is one of fact, and experience is the best guide in such matters.

The judgment should be affirmed, with costs.

CHAMPLIN, J., concurred with MORSE, J.

CAMPBELL, C. J. In this case it is difficult to see how defendant could be held liable for leaving the stone heap entirely outside of the traveled road, and near his own fence.

But, however this may be, there was no liability for the injury to the horse if negligently turned loose in the road, and there was no doubt here about the facts. The horse, which was evidently a spirited animal, had already strayed into a field, and, instead of being caught or driven slowly, was started at a run in such a way that there could be no possible control over him in the highway. He was in such a condition from excitement that he was likely to get into any trouble that was in his way, and had evidently lost his head. This was due, not merely to such friskiness as would be natural to a horse turned loose, but to the way in which he was driven into the road. I do not think that it is safe to let horses be turned loose into the street at all, and I think the owner who does this is responsible himself for what may befall his beast. But here the horse was directly imperiled by the person in charge, and was liable to do as well as to suffer mischief.

SHERWOOD, J., concurred with CAMPBELL, C. J.